UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ABSHIR AHMED JAMA,

              Petitioner,

     -v-                                              13-CV-509(JTC)

JANET NAPOLITANO, Secretary of DHS,
MICHAEL PHILIPS, District Director,
TODD TRYON, Asst. Field Office Director,
IMMIGRATION AND CUSTOMS ENFORCEMENT,

              Respondents.

---

## **INTRODUCTION**

Petitioner Abshir Ahmed Jama, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by the court's order entered May 23, 2013 (Item 2), respondent[1] has submitted an answer and return, along with an accompanying memorandum of law (Item 4), and petitioner has submitted a response in reply (Item 5) and accompanying memorandum of law (Item 6).

For the reasons that follow, the petition is denied.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Somalia, entered the United States on or about February 24, 2000 at New York, New York. *See* Item 4-1 ("Payan Decl."), ¶ 5; Item 1, ¶ 11. Petitioner has the following criminal history in the United States:

> On or about August 25, 2005, petitioner was arrested in San Diego, California and charged with Burglary in the 2nd Degree. He was issued a citation.
>
> On or about August 26, 2005, petitioner was arrested in San Diego, California and charged with Petty Theft. The case was handled informally and petitioner was released from custody.
>
> On or about September 20, 2006, petitioner was arrested in San Diego, California and charged with Possessing Burglary Tools. He was issued a citation.
>
> On or about February 23, 2010, petitioner was arrested in San Diego, California and charged with Child Cruelty. He was issued a citation.
>
> On or about February 25, 2010, petitioner was arrested in San Diego, California and charged with Receiving Known Stolen Property. He was issued a citation.
>
> On or about April 28, 2010, petitioner was convicted in the Kandiyohi District Court, State of Minnesota, of Attempted Theft. He was sentenced to six months probation and community service.
>
> On or about May 26, 2010, petitioner was arrested in Willmar, Minnesota, and charged with Burglary in the 2nd Degree and Financial Transaction Card Fraud. On November 1, 2010, petitioner failed to appear for sentencing in the District Court, Eighth Judicial District, Kandiyohi County, Minnesota, and an arrest warrant was issued.
>
> On or about June 20, 2010, petitioner was arrested in Willmar, Minnesota, and charged with Giving Peace Officer False Name of Another Person and Disorderly Conduct and was issued a citation. On November 1, 2010, petitioner failed to appear for sentencing in the District Court, Eighth Judicial District, Kandiyohi County, Minnesota, and an arrest warrant was issued.
>
> On or about July 2, 2010, petitioner was arrested in Willmar, Minnesota, and

> charged with Trespass and was issued a citation. On November 16, 2010, petitioner failed to appear for a plea hearing in the District Court, Eighth Judicial District, Kandiyohi County, Minnesota, and an arrest warrant was issued.
>
> On or about July 22, 2010, petitioner was charged with Receiving Stolen Property and Arson 5th Degree in Minnesota and was issued a citation. On November 16, 2010, petitioner failed to appear for a plea hearing in the District Court, Eighth Judicial District, Kandiyohi County, Minnesota, and two arrest warrants were issued.
>
> On or about August 16, 2010, petitioner was charged with Trespass in Minnesota and was issued a citation. On November 16, 2010, petitioner failed to appear for a plea hearing in the District Court, Eighth Judicial District, Kandiyohi County, Minnesota, and an arrest warrant was issued.
>
> On or about October 3, 2010, petitioner arrested in Minneapolis, Minnesota and was charged with Burglary. On October 21, 2010, petitioner failed to appear and a warrant was issued.

*See* Payan Decl., ¶ 6.

On October 23, 2010, petitioner applied for admission into Canada and was admitted at Fort Erie, Ontario. Payan Decl., ¶ 7. On or about September 26, 2011, petitioner was convicted in the Ontario Supreme Court of Justice in Hamilton, Ontario, Canada, of Possession of a Schedule 1 Substance, Cocaine, and Possession of Property Obtained by a Crime Under $5,000. Petitioner was sentenced to 28 days pre-sentence custody and a suspended sentence of 12 months probation. *Id.,* ¶ 8.

On September 25, 2012, petitioner was encountered by U.S. Customs and Border Patrol officers at the Rainbow Bridge, Niagara Falls, New York, after he applied for admission into the United States. *See* Payan Decl., ¶ 9. After his immigration status was verified, petitioner was detained in DHS custody and removal proceedings were commenced by a Notice to Appear ("NTA"), which charged petitioner with being subject to removal from the United States pursuant to § 212(a)(2)(A)(i)(I) of the Immigration and

Nationality Act ("INA"), as an alien who has been convicted of a crime involving moral turpitude, and pursuant to INA § 212 (a)(2)(A)(i)(II), as an alien convicted of a controlled substance offense. *Id.* at ¶ 9; *see also* Item 4-2 ("Exh. A"), pp. 12-14.

On October 24, 2012, an Immigration Judge ("IJ") ordered petitioner's removal from the United States to Canada or in the alternative to Somalia pursuant to INA § 212 (a)(2)(A)(i)(II), as an alien who has been convicted of a controlled substance offense. Payan Decl., ¶ 11; Exh. A, pp. 7-8. Petitioner did not appeal the IJ's decision. *Id.*

On November 1, 2012, DHS sent a presentation packet to the DHS Headquarters Travel Document Unit ("HQTDU") requesting that a travel document be issued for petitioner's removal to Somalia. Payan Decl., ¶ 12; Exh. A, pp. 2-22.

On October 29, 2012 DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. Payan Decl., ¶ 13; Exh. A, p. 6. The warning form advised petitioner of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(c), failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. *Id.*

According to DHS records, on January 11, 2013, petitioner made a claim of U.S. citizenship. Payan Decl., ¶ 14. On January 14, 2013, the DHS Office of the Principal Advisor ("OPLA") and DHS Headquarters Enforcement and Removal Operations ("HQ ERO") determined that petitioner had not established a probative claim to citizenship. *Id.,* ¶ 15.

DHS records indicate that representatives of Immigration and Customs Enforcement ("ICE") at the Buffalo Federal Detention Facility have been in regular contact with DHS HQTDU regarding petitioner's removal to Somalia. *See* Payan Decl., ¶ 16. Specifically, contact was made or attempted on 14 occasions between November 2012 and May 2013. *Id.* There has been a general delay in removals to Somalia due to political developments in that country. *Id.,* ¶ 17. The Department of State ("DOS") website reports that a new federal government was established in Somalia in September 2012, and that in January 2013, the United States officially recognized the Somali federal government for the first time since 1991. *Id.,* ¶ 18 (citing Department of State website - http://travel.state.gov/travel/cis_pa_tw/cis/cis_1023.html). File notes indicate that on January 14, 2013, HQTDU advised that petitioner can be removed to Somalia, but a charter flight to Somalia has not yet been scheduled. *Id.,* ¶ 16.

In accordance with DHS regulations, petitioner's custody status was reviewed in January 2013. On January 18, 2013, petitioner was notified that, upon review of his custody status and based on the totality of information available, DHS had determined that he would be a threat to the community and a flight risk if released, and detention would be continued pending removal. Payan Decl., ¶ 19; Exh. A, p. 4. On April 18, 2013, a panel was convened at the Buffalo Federal Detention Facility to conduct a further review of petitioner's custody status, including an in-person interview. Payan Decl., ¶ 20. Following completion of the file review and interview, petitioner was notified on April 25, 2013, that DHS had determined to continue his detention in DHS custody. *Id.*, ¶ 21; Exh. A, p. 2.

Petitioner filed this action on May 14, 2013, seeking habeas corpus relief pursuant

to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) and that his removal to Somalia is unlikely to occur in the reasonably foreseeable future. Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes the detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the

6

following dates:

> (i)  The date the order of removal becomes administratively final;
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens – *i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here) – beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." 8 U.S.C. § 1231(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's

---

[2] INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

7

removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts

8

of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on September 25, 2012. *See* Payan Decl., ¶ 9. He was ordered removed from the United States to Somalia in an order dated October 24, 2012, an order he did not appeal. *Id.,* ¶ 11; Exh. A, pp. 7-8; *see also* 8 C.F.R. § 1241.1(b) (order of removal shall become final upon waiver of appeal). As an alien under a final order of removal, petitioner's detention

was mandatory for the ninety-day removal period pursuant to INA § 241(a). Thereafter, upon determining that petitioner posed a significant threat to the safety and security of the community, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Petitioner has submitted several documents in support of his argument that his removal to Somalia cannot be accomplished in the reasonably foreseeable future. Specifically, he has submitted an "Attestation" from the Permanent Mission of the Somali Republic to the United Nations, dated November 30, 2012, stating that "due to civil upheaval and the protracted security crisis in Somalia . . . most of the civil and educational records have been destroyed." Item 5, Exh. A. The document further provides that there are "no consulate services for issuing travel documents" in the United States. *Id.*

Additionally, petitioner submitted a copy of his birth certificate indicating that he was born in 1994 in Mogadishu, Somalia. *Id.*

Assuming that petitioner has sustained his initial burden under *Zadvydas,* the government has responded with evidence "sufficient to rebut" the alien's showing that there is no significant likelihood that he will be deported in the reasonably foreseeable future. *Zadvydas,* 533 U.S. at 701. Despite the lack of consular services in the United States, it appears that there are no institutional barriers to petitioner's removal to his native country. The available evidence shows that in recent years, DHS has successfully repatriated a number of aliens to Somalia, despite the lack of a recognized Somali government or Somali consular services in the United States. *See* Payan Decl., ¶ 23.[3] The available records reflect that there has been regular and continuing communications between ICE representatives at the Buffalo Federal Detention Facility and DHS HQTDU. *Id.,* ¶ 16. Petitioner's removal has been approved by HQTDU and a recent DHS file note indicates that DHS is awaiting the scheduling of a charter flight to Somalia. *Id.* These circumstances provide a reasonable basis for the respondent's expectation that petitioner's release from custody and his repatriation to Somalia will take place in the reasonably foreseeable future.

The court is mindful of the Supreme Court's statement in *Zadvydas*, that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink."

---

[3] For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 32 aliens were repatriated to Somalia; in FY 2010, 41 aliens were repatriated to Somalia; and in FY 2011, 28 aliens were repatriated to Somalia. Item 8-1, ¶ 21 (citing DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3).

*Zadvydas,* 533 U.S. at 701. Here, petitioner has been detained for nearly six months in excess of the presumptively reasonable period. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that, assuming that petitioner has met his initial burden under *Zadvydas*, the respondent has provided evidence "sufficient to rebut" the alien's showing that there is no significant likelihood that he will be deported in the reasonably foreseeable future. *Zadvydas,* 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.[4]

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. September 18, 2012); *Kassama v. Dep't of Homeland Security*, 553 F.Supp.2d 301, 307 (W.D.N.Y 2009).

---

[4] To the extent that petitioner seeks an order prohibiting the respondents from removing him from the jurisdiction of this court to another detention facility, this court lacks jurisdiction to impose such an order as decisions regarding the place of confinement of aliens subject to removal orders are within the discretion of the Attorney General. *See Rady v. Ashcroft,* 193 F.Supp.2d 454, 456-57 (D.Conn. 2002); 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin\_\_\_\_
JOHN T. CURTIN
United States District Judge

Dated: October 2, 2013
p:\pending\2013\13-509.sept23.2013